**NATIONAL LABOR RELATIONS BOARD v. CALCASIEU PAPER CO., Inc. et al.**

No. 14342.

United States Court of Appeals
Fifth Circuit.

April 3, 1953.

Rehearing Denied May 6, 1953.

Elizabeth W. Weston, Atty., A. Norman Somers, Asst. Gen. Counsel, David P. Findling, Associate Gen. Counsel, National Labor Relations Bd., Washington, D. C., for petitioner.

O. R. T. Bowden, Theo. Hamilton, Hamilton & Bowden, Jacksonville, Fla., for respondents.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

HOLMES, Circuit Judge.

After proceedings before a trial examiner, the petitioner issued its order on June 18, 1952, and now seeks its enforcement pursuant to Section 10(e) of the National Labor Relations Act. 61 Stat. 136, 29 U. S.C.A. § 151 et seq. The Board found that the respondents had violated section 8(a) (1) of the Act by interfering with, restraining and coercing their employees in the exercise of their rights guaranteed by Section 7 of the Act.

The Board's order directed the respondents to cease and desist from interrogating employees concerning their union membership, sympathies, activities, and voting intentions during representation elections; promising benefits to employees who vote against unions; threatening employees with reprisals if they vote for or do not give up unions; in any manner interfering with, restraining, or coercing their employees, in the exercise of their right to form, join, or assist any labor organization; to bargain collectively through representatives of their own choosing; or to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection.

controlled housing accommodations in excess of the maximum rent prescribed under this Act."

In order to determine if respondents' employees desired to be represented by a union, the Board conducted an election at the two plants on a single-company basis on January 23, 1951, which resulted in the employees rejecting the union by a vote of 298 to 296. Upon objections thereto being filed by the two unions involved in the election, the Board ordered a hearing, and, on the basis of the trial examiner's findings, issued its order as outlined above.

Although the respondent companies are legally separate and distinct, the Board found that they constituted a single employer for the purposes of the Act. Calcasieu is a Louisiana corporation which manufactures pulp and paper in Elizabeth, Louisiana; Industries is a Florida partnership producing paper bags at the same location. The plants are approximately two hundred feet apart, and, although Industries owns its plant, the payroll for its employees is prepared by Calcasieu, which also supplies it with raw materials, power, and maintenance services. The president and chairman of the board of Calcasieu, C. G. McGehee, is the general manager of Industries, which is owned exclusively by his family. The controlling interest in the Jacksonville Paper Company, which owns the controlling stock in Calcasieu, is likewise owned by the McGehee family.

Calcasieu's personnel director, A. A. Cavanaugh, admitted questioning respondent's employees concerning the union; but was unable to recall whether he had questioned twenty, thirty, or forty employees in this respect. A week or two prior to the election he stated to an employee by the name of Parks that he didn't think Parks was for the union, adding "not as nice as we treat you fellows, and you get a vacation and a bonus, and then you get a union in here, and that will be cut off." On the following day, when the same employee was attempting to secure a loan from the company, Cavanaugh stated to him that he heard he was "going around getting fellows for the union," and said "I didn't think you would do nothing like that." On another occasion, which was approximately a week before the election, the same company official told an employee named West that he had heard the latter was "turning over for the union."

In a discussion with employee J. E. Perkins, Cavanaugh questioned him as to how he was going to vote in the election, and whether he had heard how the other employees intended to vote. Archer Turner, an employee who was also vice-president of one of the unions, was asked by the personnel director for his opinion of the union, and if he thought the employees would be better off should it be voted in by them. The same employee was told by company foreman Dennis Sermons that the company president, McGehee, "was going to make it hard" on those signing up for or holding offices in the union, should it be voted in or out by the employees.

While conversing with an employee named Willis, Cavanaugh asked the former how he thought the election was going, stating at the time that the union was "whipped"; that he was "still the boss" and would "do the hiring and firing" even though the union was accepted by the employees. He further warned that "the way a man votes in this election could make it hard or easy on him."

An employee by the name of Martin requested a wage increase from Calcasieu, and was warned not to vote for the union by company supervisor Reeves Thompson because, as he put it, "if it don't go in, you * * * will get your money." Two or three days before the election another company supervisor, Lawrence Crawford, stated to a group of employees that if they voted the union in, they would "no longer be able to sit on the bench" on which they were sitting at the time.

The findings and order of the Board are supported by substantial evidence, and the petition to enforce should be granted. It is so ordered.

Enforcement granted.